## BERNADICH *v.* BERNADICH.

1. INSURANCE—CONSTRUCTION OF AUTOMOBILE POLICY—EXCEPTIONS.

    An automobile insurance policy is to be construed in favor of the insured to effect the result, and exceptions to the general liability provided are to be strictly construed against the insurer.

2. FRAUD—PRESUMPTIONS—BURDEN OF PROOF.

    Fraud will not be presumed but must be proved and the burden of proof is upon the party who complains of it.

3. SAME—ELEMENTS OF ACTIONABLE FRAUD.

    To constitute actionable fraud, it must appear that defendant made a material representation which was false, knowingly or recklessly, without any knowledge of its truth, and as a positive assertion, with intent that it should be acted upon by plaintiff, that latter relied upon it to his injury, and each fact must be proved with a reasonable degree of certainty.

4. INSURANCE—FRAUD—DAMAGE.

    To sustain a defense of fraud because of misrepresentation or false statements in an insurance contract, it must be shown that the insurer was prejudiced or damaged by such conduct.

5. SAME—CONSTRUCTION OF FORFEITURE CLAUSES.

    Conditions contained in insurance policies which create forfeitures will be construed most strongly against the insurer and will never be extended beyond the strict words of the policy.

6. SAME—FORFEITURES—CONSTRUCTION OF POLICY.

    That construction of a forfeiture clause in an insurance policy which will sustain it will not be used if one which will defeat it is reasonably deducible from the terms and words used to express it.

7. SAME—MISREPRESENTATIONS AS TO INSURED'S NEGLIGENCE—DAMAGE TO INSURER.

    Representations of insured which tended to exculpate insured from negligence in connection with automobile accident *held*, not such a refusal to cooperate with and assist insurer in mak-

ing a defense in action brought against insured as to relieve insurer from liability under automobile policy, where such representations were admittedly untrue, as insurer did not thereby suffer detriment or injury.

8. PRINCIPAL AND SURETY—CONTRACTS—DEVIATION MUST BE MATERIAL AND RESULT IN INJURY TO RELIEVE PAID SURETY.

It is not enough, to relieve a paid surety from liability, that there was a deviation from the terms of a contract, but, in such case, it must be a material deviation, and one which results in injury to it.

9. INSURANCE—INTENT TO DEFRAUD—QUESTION OF FACT.

Whether misrepresentations or false statements void an insurance policy depends upon the intent to defraud, a question of fact for the jury.

10. GARNISHMENT—AUTOMOBILE INSURANCE—FRAUD—FINDING OF JURY CONCLUSIVE.

In garnishment proceedings against insurer under automobile liability insurance policy in which garnishee interposed defense of fraud on part of defendant in misrepresenting manner in which accident resulting in injury to plaintiff was caused, submission to jury of special question as to whether defendant, by his statements, attempted to perpetrate a fraud upon garnishee *held*, proper, and jury's finding that no such attempt was made, conclusive.

11. SAME—PRINCIPAL DEFENDANT AS PARTY.

Participation of a principal defendant in a garnishment proceeding *held*, proper as garnishment is ancillary to the main suit.

12. APPEAL AND ERROR—GARNISHMENT—HEARSAY.

In trial of garnishment proceeding by minor against insurer under automobile liability policy after testimony of principal defendant, that he had told plaintiff's father accident occurred when another car had pushed defendant off the road, had been introduced without objection, admission of testimony of father that statement to him by defendant upon inquiry as to how accident happened was that defendant did not know how it happened *held*, not to constitute reversible error, although perhaps subject to objection as hearsay.

13. INSURANCE—AUTOMOBILE—COOPERATION CLAUSE IN LIABILITY POLICY—EVIDENCE.

Record in garnishment proceeding against insurer under automobile liability policy *held*, without proof that principal de-

fendant did not comply with ''cooperation clause'' of policy; in any event, no showing of prejudice or loss to insurer because of his conduct.

14. SAME—INVESTIGATION OF ACCIDENT—NEGOTIATION OF A SETTLEMENT—CONTINUANCE.

Insurer under automobile liability policy who received defendant's final version of accident, materially different from three preceding ones, about two weeks prior to trial, some 18 months after the accident, *held*, not prejudiced as to investigation of accident in which plaintiff was injured nor as to negotiation of a settlement where they had made no application for continuance before going to trial in principal case.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 5, 1938. (Docket No. 37, Calendar No. 40,217.) Decided December 22, 1938.

Garnishment proceedings by Katherine Bernadich, a minor, by Matt Bernadich, next friend, against John Bernadich, principal defendant, and Lincoln Mutual Casualty Company, a Michigan corporation, garnishee defendant. Verdict and judgment for plaintiff against garnishee defendant. Garnishee defendant appeals. Affirmed.

*Clark C. Coulter* (*Victor H. Hampton*, of counsel), for plaintiff.

*Stewart A. Ricard*, for garnishee defendant.

McALLISTER, J. On May 30, 1935, plaintiff, a girl 10 years old, suffered injuries while riding in an automobile owned and driven by her cousin, John Bernadich, the above named defendant. The accident occurred near Elderton, in the State of Pennsylvania. Defendant Bernadich ran off the pavement, into a culvert and the automobile overturned. After the accident plaintiff's father and two boys came to Elderton and had a conversation with defendant re-

garding the cause of the accident. Defendant states that he was afraid of what the father of plaintiff would do to him if he told the truth about the accident. He states that he, therefore, told plaintiff's father that another car had forced him off the road and that he was entirely blameless for the occurrence of the accident.

Defendant had a policy of liability insurance with the Lincoln Mutual Casualty Company, above named garnishee defendant, in which the company agreed to indemnify and insure him against loss from liability arising out of a judgment against him for damages because of bodily injuries suffered by any person other than an employee of the insured, as the result of an automobile accident.

A few days after the accident, defendant furnished the insurance company with a statement from which it appeared that the responsibility therefor was due solely to the negligence of the operator of another automobile coming from the opposite direction and on the wrong side of the road. Approximately four months after the accident, plaintiff brought her suit against defendant. Before defendant's answer was filed and five days after the commencement of the suit, defendant gave another statement to the insurance company repeating in detail his previous version together with a drawing detailing the course that the alleged oncoming car followed in crossing the center of the highway and driving on the wrong side of the road, together with an indication of the course that the insured took in driving off the highway in order to avoid the collision. Defendant's answer was filed by the attorneys for the insurance company setting up as a defense the version as outlined by defendant in two statements submitted to the insurance company by him. On November 2, 1936, approximately 18

months after the accident, defendant gave another statement to the insurance company in which he again repeated that no accident would have happened if the oncoming car had remained on its proper side of the highway. None of defendant's three statements indicated any fault on his part.

On December 1, 1936, when the case was on call and about to be reached for trial, defendant sent by registered mail a letter to the insurance company stating that he did not know how the accident happened and could not swear that there was an approaching car. This was the first notification that the company had that no other car was involved and the first statement made to the insurance company indicating that defendant was in any way to blame. After receiving this letter, the company sent for defendant who appeared at its office and signed a statement setting forth that there was no other car at or near the scene of the accident and no other car was involved in any way. The day after receiving this statement the company denied liability to defendant because of his failure to aid in securing evidence and because of his falsification of reports which, it was claimed, constituted an attempt to defraud the insurance company. About two weeks later the case was reached for trial and defendant testified therein that there was no oncoming car and that he did not know how the accident happened. Plaintiff had verdict and judgment against defendant, and thereafter instituted proceedings in garnishment against the insurance company. On the trial of the issue before a jury, defendant joined in the statutory proceeding. He testified on the trial. The jury, in answer to a special question submitted by the court, found that defendant did not attempt to perpetrate a fraud upon the insurance company. Plaintiff had a verdict upon which judgment was

entered, and from which defendant insurance company appeals.

The errors assigned embody the claim that the court erred in entering a judgment because of the fact that defendant was guilty of fraud which resulted in voiding the policy; that the participation in the garnishment trial by the defendant constituted reversible error; and that prejudicial error resulted when the trial court refused to strike out alleged hearsay testimony.

The insurance contract between defendant and the company provides:

"This policy contract shall be void * * * if the assured or his agent shall attempt to defraud the company either before or after any loss occurs."

A motion for judgment notwithstanding verdict was made by the insurance company; the trial court denied such motion on the ground that defendant was not guilty of any fraud in making the various statements to the insurance company, and that no damage or prejudice to the company resulted therefrom.

An automobile insurance policy is to be construed in favor of the insured to effect the result, and exceptions to the general liability provided are to be strictly construed against the insurer. *Pawlicki* v. *Hollenbeck*, 250 Mich. 38. See, also, *Kangas* v. *New York Life Ins. Co.*, 223 Mich. 238.

In *Waldbauer* v. *Hoosier Casualty Co.*, 285 Mich. 405, it was said:

"The doctrine is well established that fraud will not be presumed but must be proved. *Robert* v. *Morrin's Estate*, 27 Mich. 306. * * *

"The burden of proof, therefore, rests upon plaintiff to show actionable fraud, the elements of which

have been stated in *Candler* v. *Heigho,* 208 Mich.
115:

" 'It is well stated in 20 Cyc. p. 13:
" ' "The general rule is that to constitute actionable fraud it must
appear: (1) That defendant made a material representation;
(2) that it was false; (3) that when he made it he knew that it was
false, or made it recklessly, without any knowledge of its truth and
as a positive assertion; (4) that he made it with the intention that
it should be acted upon by plaintiff; (5) that plaintiff acted in re-
liance upon it; and (6) that he thereby suffered injury. Each of
these facts must be proved with a reasonable degree of certainty, and
all of them must be found to exist; the absence of any one of them is
fatal to a recovery.' ' ''

To sustain a defense of fraud because of misrep-
resentation or false statements in an insurance con-
tract, it must be shown that the insurer was preju-
diced or damaged by such conduct. *Francis* v. *Lon-
don Guarantee & Accident Co.,* 100 Vt. 425 (138 Atl.
780).

"It is a firmly established rule of construction
that policies of insurance will be liberally construed
to uphold the contract, and conditions contained in
them which create forfeitures will be construed most
strongly against the insurer and will never be ex-
tended beyond the strict words of the policy. The
court will never seek for a construction of a for-
feiture clause in a policy which will sustain it, if
one which will defeat it is reasonably deducible from
the terms and words used to express it. * * *
Concededly, the insured did not 'commit or attempt
false swearing.' Nor was there any proof of a fail-
ure to comply with the provisions of the policies
requiring the insured to cooperate and assist in
defending against the claims presented, and in ad-
justing and minimizing the loss or damage, and to
abstain from fraud. * * * Appellants contend that
they suffered detriment and injury by reason of the
untruthful version of the occurrence given in the
first statement. * * * His version of the occur-
rence contained in the first statement tended to ex-
culpate him from negligence. It cannot be said that
this denotes a failure to cooperate and assist the

insurer in making a defense, or a purpose to perpetrate a fraud. Rather the reverse is the case. The insured thereby evinced a willingness and purpose to cooperate with and assist the insurer in resisting the claims for damages asserted by plaintiff. * * * Construing this clause most strongly against the insurer, it merely requires such aid and assistance as the assured may be able to render in effecting an adjustment of the claim covered by the policy, and in minimizing the loss sustained by the insured thereunder. * * * When the first action was instituted, the insurers were given a correct statement of the facts. Admittedly, they had ample time to investigate and prepare for trial, or adjust the claims if that were deemed the preferable course. They suffered no detriment or injury by reason of this alleged breach of the provisions of the contracts. * * * The proofs indisputably show that the insured substantially complied with the stated conditions of the policies, and that, in any event, the delay in advising the insurers of the facts did not result in the substantial impairment of any of their policy rights, or any detriment or injury, and, therefore, will not be permitted to work a forfeiture." *Rockmiss* v. *New Jersey Manfrs. Ass'n Fire Ins. Co.,* 112 N. J. Law, 136 (169 Atl. 663).

"It is not enough that there is a deviation from the terms of the contract, but it must be a material deviation with a paid surety, *and one which results in injury to it in order to release it from liability.*" *Realty Construction Co.* v. *Kennedy,* 234 Mich. 490, 495.

"It (the surety) is not relieved from its obligations *except when* it is shown that there is a material departure from the contract which *resulted in some injury to the surety.*" *Grinnell Realty Co.* v. *General Casualty & Surety Co.,* 253 Mich. 16.

Whether misrepresentations or false statements void an insurance policy depends upon the intent

to defraud and this is a question of fact for the jury. See *Alma State Savings Bank* v. *Springfield Fire & Marine Ins. Co.*, 268 Mich. 631.

The court properly submitted the special question to the jury on the question of whether defendant, by his statements, attempted to perpetrate a fraud; the jury's finding that no such attempt was made is conclusive.

The participation of defendant in the garnishment proceeding was not prejudicial error as garnishment is ancillary to the principal suit and defendant is properly a party therein and may participate in the proceedings. See *Hiles* v. *The Selas Co.*, 219 Mich. 88.

On the trial defendant was asked by counsel:

"*Q.* Did you talk with Matt about this accident?
"*A.* Why, he asked me how it happened, I tell him that—.
"*Mr. Ricard:* Just a minute, please. We think discussions between these people amount to hearsay."

Thereafter, there ensued a colloquy between the court and counsel, following which defendant testified that he had told plaintiff's father that another car had pushed him off the road. No objection was made to such questions or answers. Later, plaintiff's father was asked by her counsel whether he had asked defendant for a statement as to how the accident occurred. Upon objection that such answer would be hearsay, the court allowed the witness to state that defendant had told him not to be angry; that he did not know how it happened; and that all he knew was that the car upset. The admission of such testimony, while perhaps subject to the objection made, was unimportant and did not constitute reversible error.

Many cases are cited by garnishee defendant relating to the voiding of policies because of lack of cooperation. Such cases can be distinguished from the instant case largely because of the fact that there is no similar "cooperation clause" in the policy under consideration. In the instant case the cooperation clause of the policy provides:

"The assured shall personally appear in court in the trial of any cause brought against the assured, and when requested by the company, shall aid in effecting settlements, securing evidence, the attendance of witnesses and in prosecuting appeals."

There is no proof that the assured did not comply with such provision of the policy; and in any event, there was no prejudice or loss to the insurance company shown because of the conduct of defendant.

It is urged that the insurance company was prejudiced in not being able to investigate the accident and had not sufficient opportunity to make settlement rather than to go to trial. The company had two weeks from the time of learning of defendant's final version of the accident until the time of trial. No attempt was made to secure a continuance by the attorneys before the company proceeded to the trial of the principal case.

The company having failed to show prejudice, loss or damage because of the false statements of defendant, the jury having answered the special question to the effect that the defendant had not attempted to perpetrate any fraud upon the insurer, and no prejudicial error appearing in the conduct of the trial, the verdict is sustained and the judgment is affirmed, with costs to plaintiff.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.