850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carolyn STEELE, Plaintiff-Appellant,
v.
GREAT AMERICAN INSURANCE COMPANY, Defendant-Appellee.
 No. 87-1327.
 United States Court of Appeals, Sixth Circuit.
 June 29, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Carolyn Steele appeals from the judgment for defendant Great American after her testimony given at the jury trial of her suit to claim a loss on a fire insurance contract. The district judge concluded that Steele's own testimony amounted to admissions regarding two of Great American's affirmative defenses to liability on the contract. On appeal, Steele argues that genuine issues of material fact remained after her testimony which precluded the district court's entry of judgment.
 
 
 2
 A fire destroyed the home of plaintiff Steele in Ortonville, Michigan, on January 16, 1985, on which home Steele had obtained a homeowners insurance policy from defendant Great American. On April 2, 1985, Steele, through her attorney, submitted a proof of loss and supporting affidavit regarding the personal property and contents destroyed in the fire. Steele listed 412 items of personal property that she valued in excess of $245,000. Great American then conducted an examination of Steele pursuant to the policy's terms, under oath, following which it declined to pay Steele's claims of loss. Steele then filed suit in Michigan Circuit Court alleging that she had complied with the terms of the insurance contract and that defendant had wrongfully refused to honor her claim. Great American removed the action to district court based on diversity of citizenship and raised several affirmative defenses to Steele's claim.
 
 
 3
 Steele is a single woman who at the time of the fire and for some time preceding was unemployed. She moved into the house in 1978 and in 1982 built a garage on her property. No building permit was obtained for the garage, and it was built in violation of a setback ordinance. When Steele learned of the violation, she unsuccessfully sought a variance on the grounds of extreme financial hardship. Ortonville Township not only denied her request, but also sued Steele because of the zoning violation. Eventually, she entered into a consent judgment with the Township that required her to correct the violations, which would presumably require the tearing down of this structure.
 
 
 4
 Steele testified at trial that her disposable income was approximately $15,000 a year. Her tax returns from the several years preceding the fire showed taxable income, largely in the form of interest income, ranging from $15,000 to only $4,000. Steele testified that she had accumulated the personal property lost in the fire over a period of twenty years and that many of the items were gifts. In addition, Steele testified that she had received personal loans from a close friend, whom she refused to identify. Steele realized that the insurance policy in question covered only $50,000 of loss for the contents of her house and did not believe she could actually recover any more than that.
 
 
 5
 At the jury trial of the action, Steele based her case primarily on her own testimony. Following Steele's testimony and that of two other witnesses, Great American's counsel moved the court to order judgment for the defendant on the grounds that Steele, by her own testimony, had proven Great American's affirmative defenses of false swearing and concealment. The district court agreed and granted "summary" judgment for defendant. We reverse.
 
 
 6
 The single issue on appeal is whether the district court erred in granting "summary" judgment[1] based on its finding that no genuine issue of material fact existed following Steele's testimony.
 
 
 7
 In granting Great American's motion for summary judgment, the district judge made the following essential findings:
 
 
 8
 It does appear that there is no dispute as to the material facts in the matter, and that the defendant is entitled to summary judgment as a matter of law.
 
 
 9
 The plaintiff has admitted two of the defendant's claims on the witness stand here today. She has admitted, first of all, that she made a material representation of fact to the defendant insurance company; that the representation was false, that is, the matters that she deleted from her claim today on the witness stand.
 
 
 10
 She's admitted that when she made these representations, she made them recklessly, without any knowledge of their truth, and as positive assertions, and made those representations with the intention that they should be acted upon by the defendant, so the false-swearing elements certainly have been proved out of the plaintiff's mouth here this morning.
 
 
 11
 The plaintiff has also concealed a material fact from the defendant insurance company in her refusal, until now, on redirect examination in the presence of a jury, when she stated the source of her income. She has insisted, at least throughout this case, upon a very substantial income which enables her to purchase the material goods which were alleged to have been lost in this house. Very expensive items were lost in the house, and they were purchased because she has a very substantial income consisting of gifts and loans from friends.
 
 
 12
 But by making the gifts and loans very material to her case, justifying her entire claim, she has also made verification of them a material necessity to the defendant, and she made verification impossible by refusing to ever reveal the source of this income until now on redirect examination on the witness stand.
 
 
 13
 So throughout the processing of the claim she did conceal a material fact, that is, the source of her income, and in that way she did breach the insurance contract.
 
 
 14
 The district court accordingly concluded that no genuine issue of material fact existed regarding Great American's affirmative defenses of false swearing and concealment.
 
 
 15
 On review of the district court's entry of judgment, this court uses the same standard that the district court used in deciding the motion, Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987), namely, whether there exists "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c). In the summary judgment context, the court should view the evidence in a light most favorable to the nonmoving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52.
 
 
 16
 Michigan's law on issuance of fire insurance, M.C.L.A. 500.2832, M.S.A. 24.12832, provides that a fire insurance policy shall be void if the insured "has wilfully concealed or misrepresented any material fact or circumstance concerning ... the subject [of the insurance], or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." Great American contends, and the district court found, that because Steele testified at trial that several of the items listed in her Proof of Loss were not in fact in the house when the fire occurred or were duplications of listed items, she admitted to false swearing sufficient to void the policy. Steele contends that a dispute of material fact does exist regarding whether she intentionally made any misrepresentations to the company.
 
 
 17
 At trial, Steele testified to the following matters: (1) She did not intend to exaggerate the value of the personal property destroyed, and she did not expect to recover more than the $50,000 policy limit on contents coverage. (2) In making out the list of items submitted with her Proof of Loss, she listed several items that her son actually had moved to his new home before the fire occurred. She stated she did not notice this mistake until shortly before trial and pointed it out on cross-examination. (3) In reviewing her listed inventory shortly before trial, Steele also noticed that she had duplicated a few items on her list. She pointed this out on cross-examination. (4) Steele testified, however, that when she made her handwritten list of contents, when she signed the typed inventory, and when she gave her statement under oath to the insurance company in April 1985, she believed that the items noted were on the premises and were destroyed by the fire. She also stated that she had not reviewed the inventory list before she gave her statement under oath.
 
 
 18
 Under Michigan law, an insured's misstatement on a proof of loss will not prevent recovery on a fire insurance policy unless the false statement was made knowingly and willfully and with the intent to defraud the insurer. See Campbell v. Great Lakes Insurance Co. of Chicago, 228 Mich. 636, 200 N.W. 457 (1924); Barrett v. Connecticut Fire Insurance Co., 195 Mich. 209, 161 N.W. 916 (1917). The same is true where the misstatement was carelessly, but not recklessly or intentionally, made. Cf. Knop v. National Fire Insurance Co., 107 Mich. 323, 65 N.W. 228 (1895). The Michigan Supreme Court recently has affirmed the validity of this rule, see West v. Farm Bureau Mutual Insurance Co. of Michigan, 402 Mich. 67, 259 N.W.2d 556 (1977), which also has been applied by this court, see D.R.C.D.T., Inc. v. Integrity Insurance Co., 816 F.2d 273 (6th Cir.1987) (applying Michigan law).
 
 
 19
 This rule applies equally to a number of affirmative defenses that an insurer may raise to void a policy. "Where an insurance policy provides that an insured's concealment, misrepresentation, fraud, or false swearing voids the policy, the insured must have actually intended to defraud the insurer." West, 259 N.W.2d at 557. Furthermore, a misrepresentation regarding a small portion of the loss may not cause forfeiture of the entire coverage unless the insured is "shown to be clearly culpable." Id. We have determined that under Michigan law, fraud must be proved by clear and convincing evidence, Disner v. Westinghouse Electric Corp., 726 F.2d 1106, 1109-11 (6th Cir.1984), even when raised as an affirmative defense, D.R.C.D.T., 816 F.2d at 278.
 
 
 20
 Therefore, under Michigan law, the insured's intent in making a misrepresentation in a proof of loss is a material fact. In light of Steele's testimony that, until immediately before trial, she believed all the items listed in the proof of loss were in the house and destroyed in the fire, her intent in making the proof of loss is clearly in dispute. The question of intent to defraud is a question of fact for the jury, see West, 259 N.W.2d at 557, and we hold, therefore, that the district court erred in granting summary judgment for Great American on the grounds that Steele's misrepresentation voided the policy.
 
 
 21
 The district court's second basis for granting summary judgment was Steele's failure to reveal to Great American the identity of the "close friend" whom she claimed had made personal loans to her. The following exchange took place during Steele's cross-examination:
 
 
 22
 Q. Someone other than family members has given you money?
 
 
 23
 A. Yes.
 
 
 24
 Q. Who?
 
 
 25
 A. A very close friend.
 
 
 26
 Q. All right. Are you going to tell us who?
 
 
 27
 A. I would rather--I didn't--I didn't identify the name.
 
 
 28
 Q. All right.
 
 
 29
 A. I don't think it's of consequence who gave me the money.
 
 
 30
 Q. Okay.
 
 
 31
 A. It was a personal loan.
 
 
 32
 Q. All right.
 
 
 33
 (Emphasis added). From the district court's ruling on the motion for summary judgment, it appears (although not contained in the record on appeal) that Steele did reveal the source of her income on redirect examination. Nonetheless, the district court found that throughout the processing of her claim Steele had concealed a material fact (the source of her alleged income) and thereby had breached the insurance contract. Steele's brief on appeal does not address this ground for the district court's ruling other than to assert it was error.
 
 
 34
 The Michigan Court of Appeals recently has considered a case in which an insurer argued that the insured had breached the contract by failing to submit to a full and complete examination as to all material facts of his loss and his coverage. See Gibson v. Group Insurance Co., 142 Mich.App. 271, 369 N.W.2d 484 (1985). While recognizing that in some jurisdictions any refusal by the insured to answer relevant questions during an insurance investigation could void the contract, the court described the Michigan rule as one of substantial performance of the contract. 369 N.W.2d at 486. Thus, initial recalcitrance of an insured to answer questions or other failure to cooperate fully may be overriden by the insured's subsequent cooperation with the investigation. Id.; see also Gordon v. St. Paul Fire & Marine Insurance Co., 197 Mich. 226, 163 N.W. 956 (1917) (insured cooperated by testifying fully at trial after initially refusing to submit to an examination without her attorney present; policy not void).
 
 
 35
 In the instant case, Steele submitted in May 1985 to examination as part of Great American's investigation of her claim. There is no assertion that she failed to cooperate in any fashion other than by failing to identify the supplier of her extra claimed source of income or assets. In light of the company's understandable suspicion regarding the large amount of the personal property claim made by an unemployed person, the source of any non-taxed income would be a material fact to the insurer. Whether the precise identity of the donor/lender is material is a close question. Furthermore, the express language of West states that in order for "concealment ... [to void] the policy, the insured must have actually intended to defraud the insurer." 259 N.W.2d at 557. Therefore, because Steele apparently did at trial identify the person who was the claimed source of her income, and because a genuine issue does exist regarding Steele's intent to defraud Great American, we are of the view that the district court's granting judgment on the basis of Steele's claimed concealment was also error.
 
 
 36
 We must add that the action of the district court in this case was understandable and that the issues involved in this case are close ones. Plaintiff Steele's claim was suspicious in many respects, and her testimony was evidently not at all persuasive. Still, it was for the jury to determine credibility even if the outcome seemed obvious to the trial judge. We give favorable inferences to the plaintiff in reaching our decision, and it may develop, in light of defendant's proof in this case, that reasonable minds could reach but one conclusion.
 
 
 37
 For the reasons stated, however, we REVERSE and REMAND for further proceedings consistent with our opinion.
 
 
 
 [1]
 Defense counsel characterized the motion before the district court as one for summary judgment, as opposed to directed verdict. The district court treated the motion as one for summary judgment. On appeal, defense counsel asserts that his motion may also be treated as a motion for directed verdict pursuant to Fed.R.Civ.P. 50 because Steele's proofs already had been presented at trial. This assertion is not entirely accurate, however, for at the time he made the motion, counsel acknowledged that Steele had one witness left to call. The Supreme Court has noted that a court should grant summary judgment "where the evidence is such that it 'would require a directed verdict for the moving party.' " Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1987) (quoting Sartor v. Arkansas Gas Corp., 321 U.S. 620, 624 (1944))